# LEE LITIGATION GROUP, PLLC
30 EAST 39TH STREET, SECOND FLOOR
NEW YORK, NY 10016
TEL: 212-465-1180
FAX: 212-465-1181
INFO@LEELITIGATION.COM

Writer's Direct: (212) 465-1188
cklee@leelitigation.com

January 25, 2017

**VIA ECF**
The Honorable Gabriel W. Gorenstein, U.S.M.J
United States District Court
500 Pearl Street
New York, New York 10007

Re: *Maldonado v. El Aguila Lex, LLC, et al.*
Case No. 15 cv-9306

Dear Judge Gorenstein:

We are counsel to Plaintiff and we write jointly with counsel to Defendants. Pursuant to your Honor's Order dated December 22, 2016, we write to supplement the parties' December 2, 2016 letter (ECF Dkt. No. 90) requesting settlement approval and addressing the Court's concerns.

## I. Plaintiff's Range of Possible Recovery

As the Court is aware, pursuant to the terms of the parties' Settlement Agreement, Plaintiff is receiving $5,000.00 as compensation for his claims. Although Plaintiff's original damage calculations were significantly greater, through the process of discovery, Defendants were able to provide documentation that significantly undermined Plaintiff's factual allegations. Plaintiff claimed he was owed $17,327.00 in backwages. Attached hereto as **Exhibit A** are Plaintiff's original damage calculations. In summary, Plaintiff alleged he was owed: $1,560.00 for his minimum wage claim; $9,296.00 for his overtime claim; $6,471.00 for his spread of hours claim; $5,000.00 for his invalid wage statements/wage notice claims; and $25,240.40 in liquidated damages.

However, such damage calculations assume that all of the facts alleged by Plaintiff are entirely correct. Plaintiff alleged that he worked from November 5, 2012 until June 30, 2015. He alleged he worked 6 days per week, 10 hours per day, for a total of 60 hours per week. He alleged that he was paid as follows: From his hiring until December 2014, he received a straight-time hourly rate of $7.25 for all hours worked, including overtime hours. From December 2014 until the end of his employment, he received a regular hourly rate of $10.00 and an overtime rate of $15.00. Plaintiff alleged that he was not paid any spread of hours premium and was not provided with proper wage notices and wage statements.

During the process of discovery, Defendants provided their payroll records and employment documents for Plaintiff. The timesheets provided by Defendants, which were signed by Plaintiff each week, state that Plaintiff worked 8 hours per day, 5 days per week, totaling 40 hours per week. Defendants also provided copies of the wage statements provided to Plaintiff for

a significant portion of Plaintiff's work period, which correspond with the number of hours on the timesheets, which Plaintiff himself executed. The wage statements also state that beginning in June of 2013, Defendants paid Plaintiff $8.00 per hour. Although Defendants' documents are not without fault, they would significantly undermine Plaintiff's factual allegations at a trial. If Defendants were to prevail in their contentions that such documents demonstrate different facts, Plaintiff would not be owed any backwages at all. According to the documents, Plaintiff would not be owed any damages for (i) minimum wage because he was always paid at rates above the minimum wage, (ii) overtime claim because he never worked any overtime, or (iii) spread of hours because he never worked more than 10 hours per day. As such, Plaintiff's calculations would be significantly reduced. The only remaining claim would be his claim of an invalid tip notice, which would amount to $2,500.[1]

Plaintiff had previously attempted to negotiate a settlement with Defendants, without the assistance of counsel, and had agreed to only recover $2,000.00. Pursuant to the instant agreement, plaintiff has already received payment of $2,000 toward the $5,000 total. Plaintiff understood that due to Defendants' documents, there is a significant risk of not receiving any amount, or receiving an amount smaller than his settlement payment, in trial. He considers the settlement amount to be a favorable recovery because it is more than he would have received without the assistance of counsel and which may be more than he could recover if he were to continue on to trial.

## II. Plaintiff's counsels' fees

Per the Settlement Agreement, Plaintiff's counsel is receiving $7,000 in attorney's fees and costs from the settlement.

Although the parties acknowledge that the Courts typically grant a smaller percentage of the settlement as attorneys' fees, the unique history of this case merits an exception. Firstly, after engaging in discovery, it is significantly unclear if Plaintiff has any claims at all. Defendants heavily contest, and are firm that they can demonstrate through records, that Plaintiff is not owed anything in backwages. As such Plaintiff's only remaining improper wage notice claim would be fully paid out in the agreed-upon settlement. Plaintiff is receiving more than the amount that he is owed or would like recover at trial. Plaintiff is also receiving more than the amount that he accepted in the previous settlement agreement which he attempted to negotiate directly with Defendants.

The Courts have the discretion to evaluate each case individually when determining the amount that is fair for attorneys' fees, even if it is higher than 33% of the settlement amount. *See Zhuo v. Jia Xing 39th Inc., et al.,* No 14 Civ. 2848 (S.D.N.Y) (granting fees of 50% of the settlement amount, where the Plaintiff was receiving 100% of his backwages owed, and in which plaintiff's counsels' lodestar exceeded the amount of attorneys' fees being paid); *Machuca, et al. v. Villaggio Catering Corp., et al.,* No 14 Civ. 3508 (E.D.N.Y.) (granting fees of 55.6% of the

---

[1] Under *Cheeks v. Freeport Pancake House, Inc.,* the Court need only assess the fairness of the settlement as it pertains to Plaintiff's FLSA claims, and not the NYLL claims also asserted in this action. Based on Defendants' payroll documents, as explained above, Plaintiff does not, in fact, have *any* federal claim.

settlement amount, where Plaintiffs did not wish to continue litigating the matter and plaintiffs' counsels' lodestar exceeded the amount of attorneys' fees being paid).

Plaintiff's counsel's lodestar exceeds the amount of attorney's fees allocated in the Settlement Agreement. Attached hereto as **Exhibit B** are Plaintiff's counsels' detailed time records. Also, per Your Honor's request, attached hereto as **Exhibit C** is the retainer agreement between counsel and Plaintiff. Section 9 of the retainer agreement states that in the event that a settlement is reached for an individual, rather than a class, "the Firm will receive, after deduction of reimbursement of costs and expenses, the ***greater*** of (a) forty percent (40%) of the net proceeds…or (c) the Firm's full lodestar amount (current hourly rate times hours spent)" (emphasis added). Plaintiff's counsels' lodestar is in fact higher, and is even higher than the amount being paid as attorneys' fees. As such, the settlement is consistent with the retainer agreement.

In view of the foregoing, the parties respectfully request that the Court approve the Settlement Agreement. We thank Your Honor for considering this matter.

Respectfully submitted,

_s/ C.K. Lee_
C.K. Lee, Esq.

Encl.

# Exhibit A

**FOR SETTLEMENT PURPOSE ONLY**
(El Aguila)

**CALCULATION FOR**     **Hugo Maldonado**

## PERIOD 1
**Assumptions:**   Period Worked          November 5, 2012 to December 31, 2013
                   Number of weeks worked  60 weeks
                   Hours worked/week       60 hours
                   Salary                  $7.25/hour

**Overtime Wage**
   Unpaid OT = 0.5 x (Regular Rate) x (Hours Above 40 hrs) x (Number of weeks)
             = 0.5 x 7.25 x 20 x 60
             = $4,356.00

**Spread of Hour Premium**
During this working period, unpaid spread of hours premium was 6 days per week.
   Unpaid SOH = $7.25 x (Number of days worked more than 10 hours) x (Number of weeks)
              = $7.25 x 6 x 60
              = $2,610.00

**Period 1 Total** =   $6,966.00

## PERIOD 2
**Assumptions:**   Period Worked          January 1, 2014 to November 30, 2014
                   Number of weeks worked  48 weeks
                   Hours worked/week       60 hours
                   Salary                  $7.25/hour

**Minimum Wage and Overtime Wage**
   Unpaid MW = ($8* – Paid Rate) x (40 Hours) x (Number of weeks)
             = ($8 – $7.25) x 40 x 48
             = $1,440.00

*The minimum hourly rate in New York from January 1, 2014 to December 31, 2014 was $8.

   Unpaid OT = ($12 – Paid Rate) x (Hours over 40) x (Number of weeks)
             = ($12 – $7.25) x 20 x 48
             = $4,560.00

**Spread of Hour Premium**
During this working period, unpaid spread of hours premium was 6 days per week.
   Unpaid SOH = $8 x (Number of days worked more than 10 hours) x (Number of weeks)
              = $8 x 6 x 48
              = $2,304.00

**Period 2 Total** =   $8,304.00

## PERIOD 3
**Assumptions:**   Period Worked          December 1, 2014 to December 31, 2014
                   Number of weeks worked  4 weeks
                   Hours worked/week       60 hours
                   Salary                  $7.25/hour

**Minimum Wage and Overtime Wage**
   Unpaid MW = ($8* – Paid Rate) x (40 Hours) x (Number of weeks)

$$= (\$8 - \$7.25) \times 40 \times 4$$
$$= \$120.00$$

*The minimum hourly rate in New York from January 1, 2014 to December 31, 2014 was $8.

Unpaid OT = ($12 – Paid Rate) x (Hours over 40) x (Number of weeks)
$$= (\$12 - \$7.25) \times 20 \times 4$$
$$= \$380.00$$

### Spread of Hour Premium
During this working period, unpaid spread of hours premium was 6 days per week.

Unpaid SOH = $8* x (Number of days worked more than 10 hours) x (Number of weeks)
$$= \$8 \times 6 \times 4$$
$$= \$192.00$$

*The minimum hourly rate in New York from January 1, 2014 to December 31, 2014 was $8.

**Period 3 Total =** $692.00

### PERIOD 4
**Assumptions:**  Period Worked          January 1, 2015 to June 30, 2015
                  Number of weeks worked  26 weeks
                  Hours worked/week       60 hours
                  Salary                  $10/hour

### Spread of Hour Premium
During this working period, unpaid spread of hours premium was 6 days per week.

Unpaid SOH = $8.75* x (Number of days worked more than 10 hours) x (Number of weeks)
$$= \$8.75 \times 6 \times 26$$
$$= \$1,365.00$$

*The minimum hourly rate in New York from January 1, 2015 to the present is $8.75.

**Period 4 Total =** $1,365.00

**BACK WAGE = Period 1 + Period 2 + Period 3 + Period 4**
**$17,327.00**

Federal Liquidated Damage         =    $7,913.40
NY State Liquidated Damage        =    $17,327.00
Statutory Penalty for Invalid Wage and Hour Notice =    $2,500.00
Statutory Penalty for Invalid Wage Statement   =    $2,500.00

**TOTAL = $47,567.40**

Legal fees and expenses to be determined.

# Exhibit B

[REDACTED ON ECF]

# Exhibit C

[REDACTED ON ECF]